IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELLEN WHITE-JANES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 6128 |
| | ) | |
| v. | ) | Judge St. Eve |
| | ) | |
| CHICAGO BOARD OF EDUCATION, | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |

**DOCKETED**
NOV 14 2002

**FILED**
NOV 13 2002
MICHAEL W. ___
CLERK, U.S. D___

### NOTICE OF FILING

To: Shelly Kulwin
Kulwin & Associates
161 North Clark Street, Suite 2500
Chicago, Illinois 60601

**PLEASE TAKE NOTICE** that on Wednesday, November 13, 2002, we filed with the United States District Court for the Northern District of Illinois, Eastern Division, **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO BAR PLAINTIFF' FROM INTRODUCING THREE REPORTS RELATED TO DEFENDANT'S EMPLOYMENT PRACTICES**, a copy of which is hereby served on you.

CHICAGO BOARD OF EDUCATION

By: _____
One of Its Attorneys

Marilyn F. Johnson, General Counsel
Susan M. O'Keefe, Senior Assistant General Counsel
Andrew M. Spangler, Jr., Senior Assistant General Counsel
Chicago Board of Education
Law Department
125 South Clark Street
Suite 700
Chicago, Illinois 60603
(773) 553-1700

104

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELLEN WHITE JANES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 6128 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| CHICAGO BOARD OF EDUCATION, | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION
*IN LIMINE* TO BAR PLAINTIFF FROM INTRODUCING THREE
REPORTS RELATED TO DEFENDANT'S EMPLOYMENT PRACTICES**

Defendant Chicago Board of Education ("Board"), by its attorneys Marilyn F. Johnson, Susan M. O'Keefe and Andrew M. Spangler, Jr., submits its Reply In Support of Its Motion *In Limine* to Bar Plaintiff From Introducing Three Reports Related to Defendant's Employment Practices.

### INTRODUCTION

Plaintiff's attempt to introduce in evidence the computer reports that form the underlying basis for her expert's statistical analysis is nothing more than a rehash of the her evidentiary proffer that was rejected by Judge Norgle on April 5, 2002. (Transcript of April 5, 2002 Ruling, attached as Exhibit A.) Having lost that ruling, plaintiff now attempts to dress up her efforts to use the underlying documents as her way to prove her prima facie case. But, plaintiff's only purpose in offering the documents is to improperly argue statistical conclusions based on the raw data they contain. Even if there were any probative evidence in the documents, which the Board believes there is not, the chance that the jury would be mislead by the sheer volume of the data far outweighs its minimal probative value. Indeed, Judge Norgle so held. (Ex. A at 6.) This Court should reject plaintiff's attempt to mislead the jury and overturn Judge Norgle's well reasoned

decision.

In her attempt to convince the Court of the relevance of the computer reports she so desperately wants to give to the jury, plaintiff blatantly misrepresents the record in this matter. She claims that she will connect the report with a "web of evidence" that will establish discrimination. But the facts to which she refers are not contained anywhere in the record of this case. Indeed, one of the facts she represents she will prove can be termed little better than an outright lie. It is no wonder she fails to support her factual representations with references to the record. There are none.

## ARGUMENT

### I.  JUDGE NORGLE HAS RULED THAT PLAINTIFF CANNOT INTRODUCE THE COMPUTER REPORTS.

Last Spring, the parties briefed before Judge Norgle the question whether plaintiff's counsel could introduce the raw hiring data contained in the three computer reports produced by the Board and draw conclusions regarding the Board's hiring practices from those documents. On April 5, 2002, Judge Norgle ruled that the data was inadmissible without the assistance of an expert to interpret it. (Transcript of April 5, 2002 Ruling, attached as Exhibit A, at 5-7.) Judge Norgle expressly stated that he was concerned, pursuant to Fed. Rule of Evidence 403, that the jury might be mislead by the volume of raw data plaintiff was attempting to dump into the record. (Id. at 6.) At that time, plaintiff attempted to argue that the documents have relevance other than to prove statistical conclusions, but Judge Norgle refused to grant plaintiff's request to introduce those documents. (Id. at 7-25.)

Plaintiff's response to the Board's Motion, and his attempt during the November 8, 2002 Pre-Trial Conference to revisit Judge Norgle's ruling, is nothing more than an effort to undo what Judge Norgle already correctly ruled. It is well settled that raw data cannot be introduced into evidence without the aid of an expert witness. *See Frazier v. Consolidated Rail Corporation*, 851

F.2d 1447 (D.C. Cir. 1988) ("statistics must be made meaningful to the finder of fact in order to permit the plaintiffs to carry their burden of showing that their statistics are significant."); *see also Simpson v. Midland-Ross Corp*, 823 F.2d 937, 943-44 (6th Cir. 1987) (plaintiff must place statistics in a relevant context and make them meaningful); *Teamsters v. United States*, 431 U.S. 324, 340 97 S. Ct. 1843, 1856 (1977) ("their (statistics) usefulness depends on all of the surrounding facts and circumstances"); *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C. Cir. 1984) ("both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination."). Were this Court to allow plaintiff back through the door, there is little question she would argue that conclusions can be drawn about the Board's hiring practices based on the data contained in the documents. Indeed, that is what she is arguing in her response. Throughout the response, plaintiff repeatedly refers to large numbers of teachers that allegedly were hired and were unqualified or less qualified than she believes she is. (See, e.g., Response at 7.) Any such conclusions are necessarily statistical in nature and should not be allowed without the assistance of an expert.

## II. THE "NEW HIRE" REPORTS DO NOT PROVE WHAT PLAINTIFF REPRESENTS THEY WILL PROVE.

Plaintiff argues that the computer reports will help her show that the Board hired substantially younger persons for jobs she applied for who were equally or less qualified than she was. However, the documents do not contain information from which such a conclusion could be drawn. For example, plaintiff has based her determination that certain people who obtained positions with the Board were less qualified than she is or unqualified to fill the position because the "New Hire" report does not list them as having the appropriate endorsement to teach art. (Response at 7.) However, Anthony Jablonski, the Board employee that generated the report explained during his deposition that the endorsement records on the report may not contain all of the endorsements

3

that a person has. (Deposition of Anthony Jablonski, attached as Exhibit B, at 30-37.) The only way to confirm the certification and endorsements of a teacher is to check with the Illinois State Board of Education – which keeps those records. Mr. Jablonski specifically testified that the information the Board receives often is subsequently updated. (See id.) Accordingly, just because an endorsement does not show, does not mean that the teacher does not have the endorsement. Plaintiff, however, refuses to acknowledge the gaps in the data contained in the document, preferring instead to draw conclusions based on inaccurate and incomplete information.

Plaintiff also relies on the column that reports years of service in the "New Hire" report to attempt to conclude that many of the persons hired had no previous teaching experience. However, the information in that column only represents the number of years that the person had been working for the Board. (Ex. B at 20-21.) In other words, the person could have taught somewhere else for many years before obtaining a job with the Board. That experience would not be reflected in the "New Hire" report.

Finally, the reports say nothing about the pool of applicants that were interviewed for each position. It is undisputed that Ms. White Janes never made it to the interview stage of any position for which she alleges she applied. The computer reports do not show who made it past the initial screening and obtained an interview. For instance, assuming that Ms. White Janes did not apply for every position available in the Chicago Public Schools, it is entirely possible that for some of the positions, there was only one applicant. Therefore, any inference of discriminatory intent by the principal who hired that applicant would be improper. Yet, plaintiff has not attempted to depose any of those principals to determine what the makeup of the applicant pool for the position was. One can only conclude that plaintiff was afraid she would discover that she had not applied for all of those positions. The computer reports do not provide that information.

4

Accordingly, plaintiff's only purpose in introducing the computer reports is to distort the limited information contained in those reports and to draw unwarranted conclusions. Judge Norgle properly held that without expert explanation, the danger that the jury will be mislead by the information contained in the reports would far outweigh their minimal probative value.

### III. THE REASSIGNED TEACHER REPORT DOES NOT SUPPORT THE CONCLUSIONS PLAINTIFF WISHES TO DRAW FROM IT.

Plaintiff argues that she should be allowed to introduce the report containing information about reassigned teachers to show that "ninety-five percent (95%) of the teachers who were re-assigned and terminated, like Janes, were within the protected class." (Response at 11.) Once again, plaintiff wants to draw statistical conclusions from the computer reports. Judge Norgle properly forbid plaintiff to do so. Plaintiff offers no other reason for wanting to introduce this report.

However, as the Board established in its Motion, the report does not contain information on the numerous reasons that a teacher might become reassigned. Without that information, the jury is likely to be mislead into believing that all reassigned teachers were displaced as part of the curriculum redesign that affected plaintiff. Again, Judge Norgle has ruled that the possibility that the jury would be mislead significantly outweighs the minuscule probative value of the documents. There is no reason to revisit that ruling.

### IV. PLAINTIFF'S REPRESENTATIONS ABOUT THE "WEB OF EVIDENCE" SHE WILL OFFER ARE NOT SUPPORTED IN THE RECORD.

In an attempt to buttress her attempt to improperly introduce the computer reports, plaintiff makes sweeping representations regarding facts she will "prove" as part of her "web of evidence." However, she offers no citations to the record to support those facts. And, indeed, there are none. Plaintiff knows the statements are wrong, yet she continues in asserting them in the hope she can convince the Court of their truth without ever offering any evidence to support them. For

5

example, plaintiff repeatedly refers in her response to "the undisputed fact that the CBE knowingly gave Janes misleading vacancy lists while providing substantially younger less qualified applicants more accurate information about job vacancies." (Plaintiff's Response at 8). That statement is a lie. There is absolutely no record evidence to support it. And counsel for plaintiff knows that. To the contrary, Toni Hill testified that the vacancy reports, which contain all budgeted vacancies were given to all reassigned teachers – no matter their age. (Deposition of Toni Hill, attached as Exhibit C, at 55-60.) There is no evidence to support the statement that vacancy lists were only given to older teachers.

Similarly, plaintiff claims that the Board's witnesses have testified that plaintiff "took all possible steps to obtain a CBE teaching position." Presumably plaintiff is referring to the testimony of JoAnn Joyce that she did not specifically have any reason to believe that plaintiff was not trying to get a job. Plaintiff's revision of that testimony and the similar testimony of other witnesses is incorrect. These are only some of the egregious misrepresentations contained in plaintiff's response.

6

## CONCLUSION

For the foregoing reasons and those stated in the Board's Motion, the Court should exclude from evidence the computer reports containing raw hiring data.

Respectfully submitted,

CHICAGO BOARD OF EDUCATION

By: _____
One of Its Attorneys

Marilyn F. Johnson, General Counsel
Sherri L. Thornton, Associate General Counsel
Susan M. O'Keefe, Senior Assistant General Counsel
Chicago Board of Education
125 South Clark Street, Suite 700
Chicago, Illinois 60601
(773) 553-1700

7

*See Case File for Exhibits*