# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6128 | **DATE** | 11/15/2002 |
| **CASE TITLE** | Ellen White Janes vs. Chicago Board of Education | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
|---|---|---|
| (2) | ☐ | Brief in support of motion due __ ___. |
| (3) | ☐ | Answer brief to motion due__ ___. Reply to answer brief due_ ____. |
| (4) | ☐ | Ruling/Hearing on ____ _ set for _____ at __. ___. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on __ ____ set for ___ _ at __ _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on __ ____ at _____ |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _ ____ at _____ . |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2). |

(10)■ [Other docket entry] Enter Memorandum Opinion and Order. The Defendant's motion to bar evidence relating to claims allegedly outside the scope of Plaintiff's EEOC charges (R. 84-1) is denied; the Defendant's motion to bar Plaintiff's Statistical Expert (R. 85-1) is granted; the Defendant's motion to bar the testimony of Stephen Kallaus (R. 87-1) is denied; the Defendant's motion to bar the testimony of Nanette Powell (R. 88-1) is denied; the Defendant's motion to bar the testimony of Carlos Ponce and Xiomara Metcalfe (R. 90-1) is granted; the Defendant's motion to bar the testimony of the 1995 and 1997 amendments to the reassignment policy (R. 91-1) is granted;the Defendant's motion to bar evidence concerning the Haberman Interview Instrument (R. 89-1) is granted in part and denied in part; the Defendant's motion to bar three reports relating to the Board's employment practices (R. 92-1) is granted; the Plaintiff's omnibus motion *in limine* (R. 93-1) is granted in part and denied in part; and the Plaintiff's motion to bar newly asserted defenses (R. 94-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | **NOV 18 2002** | | |
| | Notified counsel by telephone. | | date docketed | | 113 |
| ✓ | Docketing to mail notices. | | 6~( | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| TH✔ | courtroom deputy's initials | | | | |
| | | | mailing deputy initials | | |

U.S. DISTRICT COURT CLERK
15 PM 12: 15 02 NOV 15
Date/time received in central Clerk's Office

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| ELLEN WHITE JANES, | ) | |
| | ) | **DOCKETED** |
| Plaintiff, | ) | No. 00 C 6128 |
| | ) | **NOV 1 8 2002** |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| CHICAGO BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ellen White-Janes ("Janes") has sued the Chicago Board of Education ("the Board") for alleged age discrimination in connection with its decision to terminate her and its later refusal to rehire her. The parties have filed various motions *in limine* seeking to exclude certain evidence at trial. The Court addresses each of these motions in turn below.

## BACKGROUND

Plaintiff Ellen White-Janes was employed as a teacher by the Chicago Board of Education from 1969 to 1999, teaching elementary school and high school art. Most recently, Janes taught art at Roosevelt High School and served as chair of the art department.

During the 1997-1998 school year, the Board initiated a High School Curriculum Redesign, which increased the graduation requirements for incoming freshman but vested principals with some discretion in how to implement curriculum changes. In connection with the Curriculum Redesign, Roosevelt reduced the number of art classes available to students during the 1998-1999 school year and displaced or reassigned three art teachers, including Janes. Pursuant to the Board's reassignment policy, Janes served as a full-time substitute that school

113

year, while applying for other teaching positions within the Chicago Public Schools. When she failed to obtain another such teaching position, Janes was terminated in August of 1999.

For the 2000-2001 school year, Roosevelt increased the number of art classes available to students and added a second full-time art teacher position, allegedly in response to increased enrollment. Roosevelt received seventeen applications for this position. Principal Miguel Trujillo and assistant principal Willard Uber interviewed ten of those candidates, including Janes. During these interviews, Trujillo and Uber "scored" the applicants based on their responses to various questions. Ultimately, Roosevelt hired Sonia B., who received the highest combined interview score from Trujillo and Uber.

Janes contends that the Board's decision to terminate and its refusal to re-hire her were motivated by age discrimination.

## ANALYSIS

It is clear that courts have the power to exclude evidence *in limine* under their authority to manage trials. *Aguilar v. Dixon*, No. 93 C 1936, 1995 WL 319621, at *3 (N.D. Ill. May 25, 1995) ("Pursuant to its power to manage trials, the court may exclude evidence in limine."). Court should grant such motions, however, "only when evidence is clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). Furthermore, evidentiary rulings should generally "be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.*; *see also Noble v. Sheahan*, 116 F.Supp.2d 966, 969 (N.D. Ill. 2000).

**A.      The Board's Motion to Bar Evidence Relating to Claims Allegedly Outside the Scope of Plaintiff's EEOC Charges**

The Board contends that Janes' claims should be limited to the scope of the charges she filed with the EEOC and that she should not be permitted to introduce any evidence outside the scope of those charges. The Board argues that since Janes did not specifically refer in her EEOC charges to either the RIF at Roosevelt or the Board's subsequent failure to hire her for some other teaching position within the Chicago Public Schools, she cannot assert claims based on these alleged wrongs and cannot introduce evidence to support those claims.

As a general rule, a plaintiff suing under Title VII cannot bring claims in a lawsuit that were not included in his or her EEOC charge. *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). However, "because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). *See also Kristufek v. Hussman Foodservice Co., Toastmaster Div.*, 985 F.2d 364, 368 (7th Cir. 1993) ("EEOC charges are to be read broadly"). Thus, the test for determining whether a plaintiff's claims are within the scope of his or her EEOC charges is (1) whether "there is a reasonable relationship between the allegations in the charge and the claims in the complaint" *and* (2) whether "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. *See also Harper*, 45 F.3d at 148 (claim must be "like or reasonably related to" EEOC charges).

The Board argues that Janes' EEOC charges were limited simply to her failure to retain (or get back) a teaching position at Roosevelt. The Board contends that Janes' claims beyond Roosevelt are not "reasonably related" to her EEOC charges because those claims essentially represent alleged discrimination by hundreds of other schools. Thus, the Board urges that Janes' evidence relating to hiring decisions at other schools under the Board's control is inadmissible.

Contrary to the Board's contention, Janes' claims arising from the RIF and the Board's failure to hire her for some other position within the Chicago Public Schools do fall within the scope of her EEOC charges. Janes filed two sets of EEOC charges naming the Board -- the first after she was terminated in 1999 and the second after she was rejected in 2000 for the art teacher position at Roosevelt. In the first set of EEOC charges, Janes asserted that her "position was eliminated," she had been "subjected to a reduction in force," and the Board "had stated that there were no positions for [her]." Thus, Janes' claims pertaining to the RIF and the Board's failure to hire her for some other position within the Chicago Public Schools are actually expressly referred to her EEOC charges. Even if one assumes that these references in her EEOC charges are not sufficiently detailed, it is clear that Janes' claims are reasonably related to those charges. *Cf. Bottoms v. Illinois Dept. of Human Servs.*, No. 00 C 1912, 2000 WL 1304794, *5 (N.D. Ill. Sept. 13, 2000) (claims relating to refusal of flex-time scheduling and denial of promotion reasonably related to charges of harassment).

In addition, it is reasonable to expect that Janes' claims would have developed out of an EEOC investigation of her charges. Indeed, because Janes' charges expressly alleged that she had been terminated in connection with a RIF and that the Board had informed her that no teaching positions were available to her, it is reasonable to assume that the EEOC would have

4

examined the RIF and investigated whether other teaching positions were in fact available. Thus, Janes' claims pertaining to the RIF and the Board's failure to hire her for some other position within the Chicago Public Schools do fall within the scope of her EEOC charges, and evidence relevant to those claims is admissible.

The Board's motion to bar evidence relating to claims allegedly outside the scope of Plaintiff's EEOC charges is denied.

### B. The Board's Motion to Bar Three Reports Related to the Board's Employment Practices

The Board has moved to bar three of its reports concerning: (1) teachers hired by the Board from January 1, 1998 through June 30, 2001 ("the new hire report"); (2) art teachers hired by the Board from January 1, 1998 through June 30, 2001 ("the art teachers report"); and (3) teachers reassigned by the Board, including whether they found new teaching positions or were terminated ("the reassignment report").

The Board argues that all three reports are inadmissible because Plaintiff cannot lay a foundation for the reports through expert testimony. The Board further argues that Plaintiff's apparent attempt to introduce the reports without expert testimony is barred by Judge Norgle's April 5, 2002 ruling that an expert was necessary to lay the foundation for these three reports. Judge Norgle found:

> [H]aving looked at the proffer and the response of the Board, the Court finds that the proffered statistical evidence would not be admissible unless supported or interpreted somehow by an expert pursuant to Rule 702. The suggestion that somehow it would be admissible and more or less speak for itself is rejected by the Court.

*   *   *

It is the nature of the evidence that is proffered here that leads the
Court to the conclusion that an expert is necessary under these
circumstances, lest the jury be misled in terms of [Rule] 403.
There is the danger, in terms of 403, that the evidence proffered
would be confusing or it might mislead the jury or might suggest
innuendos. And, so, in its raw form, even though it is essentially a
business record of the defendant, it needs some analysis.

(*See* R. 104-1, Def.'s Reply in Support of Mot. to Bar Three Reports, Ex. A, 5-6.)[1]

Plaintiff's opposition to the Board's motion does not offer any argument why this Court

should second guess Judge Norgle's ruling that expert testimony is required to lay the foundation

for these three reports. *Cf. Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115F.3d 1332, (7th Cir. 1997)

("The doctrine of law of the case requires the second judge in a case in which there has been a

reassignment to abide by the rulings of the first judge, unless some new development, such as a

new appellate decision, convinces him that his predecessor's ruling was incorrect."). Instead,

Plaintiff offers a host of reasons why the statistics contained in these reports are relevant and

admissible through a non-expert summary witness. Plaintiff claims, for example, that the new

hire and art teacher reports show that the Board hired hundreds of younger teachers to positions

she sought and was qualified to fill, including 25 art teachers and 861 elementary school teachers

during the one year dating from when she was terminated and her position was eliminated.

Further, Plaintiff argues that the reassignment report is relevant evidence of discrimination

because it establishes that approximately ninety-five percent of the teachers reassigned and

subsequently terminated were members of the protected class.

---

[1] The Board also argues that any limited relevance of the reports is outweighed by the potential
unfair prejudice because the new hire and art teacher reports do not list those who applied for
those positions or the reasons why they were hired, and because the reassignment report does not
list the various reasons that teachers were reassigned and terminated.

By suggesting that these three reports are admissible without expert testimony, Plaintiff has essentially moved for reconsideration of Judge Norgle's April 5, 2002 ruling. The Seventh Circuit has repeatedly cautioned that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res., Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted); *see also In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F.Supp. 261, 267 (N.D. Ill. 1992) ("motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments."). Accordingly, a court will entertain a motion for reconsideration only where the moving party can establish that the law or facts have changed significantly since the issue was presented, or the court has "patently misunderstood a party," has "made a decision outside the adversarial issues presented," or has "made an error not of reasoning, but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales*, 906 F.2d 1185, 1191 (7th Cir. 1990). Because Plaintiff has failed to address Judge Norgle's finding that expert testimony is required to lay a proper foundation for these three reports, she has fallen far short of her burden for reconsideration.

Accordingly, the Board's motion to bar evidence of three reports related to the Board's employment practices is granted.

## C.    The Board's Motion to Bar Plaintiff's Statistical Expert

The Board has moved to bar the testimony of Dr. Hal Sider, Plaintiff's proposed statistical expert. The Board argues that Dr. Sider's opinions are flawed and fail to comply with

the principles of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

### 1.    Dr. Sider's Statistical Analysis Opinion

Dr. Sider has two basic opinions that he has developed for this case. For what Plaintiff refers to as the statistical analysis opinion, Dr. Sider analyzed Board elementary school hiring data and concluded that the discrepancy between the share of elementary school teacher hires over 40 in the Chicago Public Schools during the relevant time period here compared to the share of elementary school teacher hires over 40 elsewhere during that same period was statistically significant and consistent with age bias. (*See* R. 85-1, Def.'s Mem. of Law in Support of Mot. to Bar Testimony of Pl.'s Statistical Expert, Ex. A, p.2.)

As an initial matter, Plaintiff argues that the Board waived its challenge to the admissibility of Dr. Sider's statistical analysis opinion because she claims that it failed to challenge that opinion in the briefing on the Board's motion for summary judgment. Plaintiff cites *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558 (7th Cir. 2002), for the proposition that evidence not challenged at the summary judgment stage is deemed admissible at trial. *Metropolitan Life*, however, does not stand for that proposition. That case involved review of a district court's decision to grant summary judgment. On appeal, the Seventh Circuit held simply that the non-movant's failure to properly challenge certain evidence cited by the movant in its motion for summary judgment resulted in a waiver of those objections for purposes of that motion. *Metropolitan Life*, 297 F.3d at 562-63.

8

Contrary to Plaintiff's argument, the Board's supposed failure to challenge Dr. Sider's statistical analysis opinion during summary judgment does not preclude its objection to Plaintiffs' use of that opinion at trial. *See, e.g., Chasse v. Garaventa CTEC, Inc.*, No. 00-160-P-C., 2001 WL 10290, at *3, n.5 (D. Me. Jan. 2, 2001) (permitting motion *in limine* challenging purported expert where the movant had not challenged the expert's opinion in briefing summary judgment).

The Board argues that Dr. Sider's statistical analysis opinion fails to satisfy the standards of *Daubert* and *Kumho Tire* because the statistical analysis opinion would not assist the trier of fact. The Board argues that in discrimination cases, statistics must be based on the relevant labor market, otherwise the statistics are inadmissible. In this case, the Board contends that Dr. Sider's statistical analysis opinion is inadmissible because he compared the Board's hiring of teachers over 40 to the rate of such hiring elsewhere during the same period, rather than to the pool of potential applicants available to the Board.

Certain factors are crucial to statistical evidence in discrimination cases. In particular, "properly identifying the relevant labor market is the key ingredient in proving Title VII discrimination through the use of statistics." *E.E.O.C. v. Chicago Miniature Lamp Works*, 947 F.2d 292, 302 (7th Cir.1991). *See also Bell v. E.P.A.*, 232 F.3d 546, 553 (7th Cir. 2000) ("A valid statistical analysis must encompass the relevant labor market."). The relevant labor market has been defined to include not just those qualified but also those potentially interested in applying for the job. *Chicago Miniature Lamp Works*, 947 F.2d at 302.

There is no dispute that in this case Dr. Sider's statistical analysis was not based on the relevant labor market -- *i.e.*, those teachers qualified and potentially interested in securing a

9

teaching position within the Chicago Public Schools. For example, Dr. Sider might have analyzed the percentage of teachers over forty hired by the Board compared to the percentage of teachers qualified and potentially interested in applying to the Board. Instead, Dr. Sider compared the percentage of teachers over 40 hired by the Board to the percentage of teachers over 40 hired nationwide. Because Dr. Sider's statistical analysis opinion is not based on the relevant labor market, it would not assist the trier of fact. *See, e.g., Bennet v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002) (rejecting statistical analysis of Naperville school district hiring compared to the pool of teachers in Illinois and in the Chicago area); *Kidd v. Illinois State Police*, 167 F.3d 1084, 1102 (7th Cir. 1999) ("Had Kidd proffered the statistics to establish a pattern of discriminatory *hiring*, the relevant comparison would be one between the racial composition of ISP's cadet classes and the racial makeup of the workforce qualified for employment as ISP troopers.") (emphasis in original).

Nonetheless, Plaintiff argues that Dr. Sider has compensated for his failure to analyze the relevant labor market by submitting a supplemental expert report from Dr. Sider purporting to show that the pool of potential applicants for elementary school teachers in the U.S. is virtually identical to that for the Chicago area. In other words, Plaintiff essentially suggests that Dr. Sider's earlier statistical analysis opinion would not have changed significantly had he performed an analysis of the relevant labor market. Dr. Sider's belated attempt to supplement his expert opinions in response to the Board's motion *in limine* is, however, improper under Rule 26(a)(2) and Rule 37(c)(1), which require that an expert disclose all of his opinions at least 90 days prior to trial. *See Dura Automotive Sys. of Indiana v. CTS Corp.*, 285 F.3d 609, 615 (7th Cir. 2002); *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230-31 (7th Cir. 1996).

10

Plaintiff also argues that Dr. Sider should be excused from the requirement that statistics in discrimination cases be based on the relevant labor market because the Board could not provide such information, citing *Mister v. Illinois Central Gulf R.R. Co.*, 832 F.2d 1427 (7th Cir. 1987). Specifically, Plaintiff argues that the Board could not supply the applicant data that would flesh out the relevant labor market. As the Board suggests, however, there are other potential sources of data concerning the potential labor market, including the Illinois State Board of Education. Moreover, the Board points out that the same source that supplied the data for Dr. Sider's nationwide analysis contained the data that would have permitted an analysis of the relevant labor market. Indeed, with his supplemental report, Dr. Sider did undertake a limited analysis of the relevant geographic market by attempting to show that the pool of potential applicants for elementary school teachers in the U.S. is virtually identical to that for the Chicago area, which belies Plaintiff's claim that Dr. Sider could not have analyzed this labor market earlier.[2]

The Board's motion to bar Dr. Sider's statistical analysis opinion is granted.

## 2. Dr. Sider's Statistical Probability Opinion

For what Plaintiff refers to as the statistical probability opinion, Dr. Sider analyzed data relating to the sixty-nine individuals hired by the Board as high school art teachers who were at least ten years younger than Janes and concluded that the probability that Janes would not be offered any of those positions due to chance alone was less than one in ten million. (*See* R. 85-1, Def.'s Mem. of Law in Support of Mot. to Bar Testimony of Pl.'s Statistical Expert, Ex. A, p.1.)

---

[2] Because the Court concludes that Dr. Sider's statistical analysis opinion would not assist the trier of fact, the Court need not address the Board's argument that the opinion is not methodologically sound.

Plaintiff has stipulated that if she is permitted to introduce Dr. Sider's statistical analysis opinion, she will not seek to introduce his statistical probability opinion, unless that opinion is necessary to her rebuttal case. Because this Court has determined that Dr. Sider's statistical analysis opinion would not assist the trier of fact and is, therefore, inadmissible, the Court will address whether Dr. Sider's statistical probability opinion satisfies the standards of *Daubert* and *Kumho Tire*.

The Board argues that Dr. Sider's probability analysis is not methodologically sound and would not assist the trier of fact because Dr. Sider failed to take into account other potential variables that may have contributed to these hiring decisions besides the age of applicants. The Board relies principally on *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir. 1997), where the Seventh Circuit held that a proposed expert's statistical analysis was inadmissible in an age discrimination case.

In *Sheehan*, the plaintiff sued for alleged age discrimination for his termination in connection with a RIF. 104 F.3d at 941. The plaintiff and fourteen others had been terminated, leaving just two employees in the office. *Id.* The plaintiff retained a proposed expert who examined the records of the seventeen employees in the office and who concluded that the RIF was likely motivated by age discrimination because the two employees who were retained were younger and all of the older employees had been terminated. *Id.* The trial court permitted the expert to testify about his statistical analysis, and on appeal, the Seventh Circuit reversed.

The Seventh Circuit held that the proposed expert's statistical analysis failed to satisfy the standards of *Daubert* because the expert omitted certain employees from his analysis, failed to consider variables other than age that might have motivated particular termination decisions, and

12

ignored the differences between the jobs worked by the various employees:

> The expert's failure to make any adjustment for variables bearing
> on the decision whether to discharge or retain a person on the list
> other than age -- his equating a simple statistical correlation to a
> causal relation . . . -- indicates a failure to exercise the degree of
> care that a statistician would use in his scientific work, outside of
> the context of litigation.

*Sheehan*, 104 F.3d at 942. *See also Mister*, 832 F.2d at 1431 (plaintiff's statistical work "[left]

much to be desired" because his expert "used no independent variables other than race. He

assumed, in other words, that all applicants are identical in every respect except race. This is not

necessarily true."); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1044 (7th Cir. 1988) (noting that

plaintiff's statistical evidence was of limited value because it failed to account for variables other

than religion: "Members of each group may have other things in common, and one or more of

those other things, rather than religion, may have caused the difference in mean salary

increases."). The Board argues that under *Sheehan* Dr. Sider's failure to take such variables

other than age into consideration dooms his statistical probability opinion in this case.

Janes counters that Dr. Sider's statistical probability opinion is offered only to prove that

she did not fail to obtain a job solely on the basis of chance, citing *Adams v. Ameritech Servs.,*

*Inc.*, 231 F.3d 414 (7th Cir. 2001). In *Adams*, the Seventh Circuit reversed the trial court's

decision to grant summary judgment in an age discrimination case, where the district court had

concluded that the plaintiffs' statistical evidence was inadmissible because it purported to show

that differences in treatment were "not due to chance." 231 F.3d at 427. The Seventh Circuit

acknowledged that the statistical evidence did not address whether the reason for the alleged

discriminatory conduct "may have been age or it may have been some other factor or factors

positively correlated both with age and the likelihood of determination." *Id.* Nonetheless, the Seventh Circuit suggested that the statistical evidence should have been considered by the district court when ruling on summary judgment because "ruling out chance was an important step in the plaintiffs' proof." *Id.* Significantly, however, the Seventh Circuit expressly noted that it was not addressing whether the statistical evidence would be admissible at trial, and it invited the trial court to consider the question of admissibility at trial under Rule 403. *Id.* at 428.

Even assuming that Dr. Sider's statistical probability opinion is methodologically sound, however, the Court concludes that the opinion would not assist the jury at trial. Plaintiff offers the statistical probability opinion in support of her claim that she should have been rehired by the Board in 2000, but the statistical probability opinion will not aid the jury in deciding that issue. Indeed, the question is not whether Janes failed to get rehired by chance but whether the Board's decision not to rehire her was motivated by improper age discrimination. As Judge Holderman explained in rejecting a similar "not by chance" analysis,

> This statistical analysis is completely immaterial to any issue in this case because the question here is not whether Schuster was selected at random for inclusion in the RIF, but whether Lucent's reasons for Schuster's inclusion in the RIF are forbidden or untrue. The statistical evidence presented by Schuster proves absolutely nothing . . .

*Schuster v. Lucent Tech., Inc.*, No. 00 C 5228, 2001 WL 1230645, at *7 (N.D. Ill. Oct. 12, 2001). Moreover, there is a significant likelihood that Dr. Sider's statistical probability opinion will actually mislead the jury. Dr. Sider's opinion assumes that Janes was equally or more qualified compared to all the persons hired for art teacher positions, and he did not account for other

14

factors that might have motivated the decision to hire teachers other than Janes. Thus, this Court concludes that Dr. Sider's statistical probability opinion would not assist the jury at trial and is, therefore, inadmissible.

The Board's motion to bar Dr. Sider's statistical probability opinion is granted.

### D.    The Board's Motion to Bar the Testimony of Stephen Kallaus

The Board has moved to bar the testimony of Stephen Kallaus, a twenty-seven year old art teacher who was hired to teach art at Roosevelt in the Fall of 2000. Plaintiff indicates that Kallaus will testify that (1) he, like Janes, applied for teaching positions by submitting his resume to the Board; (2) he was matched with positions for which he was qualified within weeks after submitting his resume; (3) he was interviewed and hired for the position at Roosevelt; (4) he was asked about his art portfolio and teaching qualification during his interview with Trujillo.

Plaintiff contends that Kallaus' testimony tends to support Janes' claim that she applied for other teaching positions by submitting her resume to the Board and that the Board failed to match her with available positions. The Board suggests that this testimony does not establish that Janes' did in fact apply for other teaching positions simply by submitting her resume. Contrary to the Board's suggestion, however, Kallaus' anticipated testimony does tend to support Janes' claims that after submitting her resume, she should have been matched up with other available teaching positions. Of course, the Board could challenge this at trial by showing, for example, that Kallaus may have jumped through other procedural hoops before securing interviews. At this stage though, Kallaus' anticipated testimony is relevant to Janes' argument that she successfully applied for other teaching positions.

15

Plaintiff also argues that Kallaus' testimony undermines the Board's claim that Trujillo selected Kallaus simply on the basis of his score on an objective test. The Board suggests that Kallaus was not interviewed during the same job search that Trujillo interviewed Janes because Kallaus was interviewed *after* she had already failed to get the teaching position. Thus, the Board claims that whatever happened at the interview is irrelevant to Janes' claims. This Court disagrees. It is undisputed that Trujillo hired Kallaus for the same position for which Janes previously had applied. Kallaus' testimony suggesting that Trujillo may have considered factors other than the objective test when he hired Kallaus is relevant to counter the Board's claim that Janes was rejected for that position purely on the basis of the objective test.

The Board's motion to bar Kallaus' testimony is denied.

### E.    The Board's Motion to Bar the Testimony of Nanette Powell

The Board has moved to bar the testimony of Nanette Powell, a recruiter for the Board with responsibility for matching up applicants with available teaching positions. Plaintiff indicates that Powell will testify concerning: (1) how recruiters match up applicants for vacant teaching positions; (2) the qualifications necessary to teach at one of the Board's schools; (3) the Board's teacher recruiting efforts; and (4) the Board's awareness that Janes was seeking an alternate teaching position.

The Board argues that Powell's testimony is irrelevant because she worked as a recruiter only during the 2000-2001 school year and cannot testify about the Board's policies, procedures or requirements during the period that Janes was in the reassigned teacher pool. As Plaintiff points out though, the fact that Powell worked after the Board terminated Janes and declined to re-hire her does not render Powell's testimony inadmissible *per se. Riordan v. Kempiners*, 831

16

F.2d 690, 699 (7th Cir. 1987) ("a blanket exclusion of evidence that occurred before or after the discrimination is arbitrary"). The Board makes no suggestion that its policies, procedures or requirements changed before Powell worked as a recruiter. Thus, her testimony on such issues is potentially relevant. If, however, the Board can show that those policies did change prior to her arrival, then her testimony might not be relevant.

The Board further argues that Powell's testimony about the standards and requirements for elementary school teachers is inadmissible because that testimony does not support Plaintiff's claims that the Board hired unqualified teachers. Of course, as a recruiter for the Board, designated as someone with knowledge of the requirements to teach elementary school, Powell is competent to testify about those issues. Indeed, the Board concedes that Powell's testimony would show that Janes was qualified for certain teaching positions. It may be that the Board is correct that Powell's testimony does not support Plaintiff's claims on another issue -- namely, whether the Board hired any unqualified teachers during the period when Janes was looking for a job -- but that does not require exclusion of Powell's testimony altogether.

The Court notes that Plaintiff must lay an adequate foundation that any testimony from Powell concerning Janes is based on first hand knowledge. Further, if Plaintiff seeks to elicit specific testimony from Powell that the Board hired unqualified teachers during this period, she will likewise have to lay an adequate foundation that Powell is competent to testify on that specific issue.

The Board's motion to bar Powell's testimony is denied.

### F.     The Board's Motion to Bar the Testimony of Carlos Ponce

The Board has moved to bar the testimony of Carlos Ponce, a human resources director for the Board. The Plaintiff indicates that Ponce will testify concerning the Board's increases to the teacher recruiting budget. Plaintiff claims that this evidence is relevant to rebut the Board's claim that there were no positions for Janes.

The Board argues that Ponce's testimony is irrelevant and prejudicial because the overall recruiting budget does not tend to show that the Board was actively seeking teachers in those areas where Plaintiff was qualified to teach. Indeed, the Board suggests that the increased recruiting budget was intended to redress the shortage of teachers for high school math and science -- subjects that Janes was not qualified to teach. The Board contends that the best evidence of alleged vacancies that Plaintiff was qualified to apply for are the lists of vacancies themselves.

This Court agrees. Ponce's testimony concerning the overall recruiting budget is of only limited relevance to Plaintiff's claim that there were positions available for Janes. Moreover, the potential for unfair prejudice and confusion of the issues substantially outweighs any limited relevance because the jury might conclude that the Board was seeking teachers for positions that Janes might have held, when in fact that might not be the case. *See* Fed. R. Evid. 403.[3]

The Board's motion to bar Ponce's testimony is granted.

---

[3] The relevance of Ponce's testimony would be greater and the potential for prejudice more limited if Plaintiff could show that the increases in the recruiting budget were somehow tied to the need for additional teachers in those subjects that Plaintiff was qualified to teach.

### G. The Board's Motions to Bar the Testimony of Xiomara Metcalfe and the 1995 and 1997 Amendments to the Board's Reassignment Policy

The Board has moved to bar the testimony of Xiomara Metcalfe, another human resources director for the Board. The Plaintiff indicates that Metcalfe will testify concerning the changes made in 1997 to the Board reassignment policy. Further, the Board has moved separately to bar evidence of the changes themselves made in 1995 and 1997 to the Board's reassignment policy. The Board argues that the changes to the policy are irrelevant because they were implemented before Janes was terminated.

The Court agrees with the Board that Metcalfe's testimony concerning the changes in the reassignment policy and evidence of the themselves is irrelevant. Regardless what the Board's reassignment policy was prior to Janes' reassignment and termination, it is clear that Janes was reassigned and ultimately terminated when she failed to secure an alternate teaching position during her reassignment period. Thus, the key issues at trial include, for example, whether Plaintiff actually applied for other positions and whether she was qualified for such positions. Evidence of the changes to reassignment policy made the year before Janes was reassigned are simply irrelevant to those questions. Moreover, there is no evidence that the changes to reassignment policy were somehow related to the Curriculum Redesign, which the Board contends was responsible for Janes' termination.

Evidence concerning the change to the reassignment policy might be relevant if, for example, Plaintiff contended that the policy was changed specifically to make it easier to discriminate against older teachers. Plaintiff has made no such claim and supplied no evidence to support it. Indeed, such a claim would be beyond the scope of Plaintiff's EEOC charges. In

the event that Plaintiff can lay a foundation by showing, for example, that the changes to the reassignment policy were somehow linked to the Curriculum Redesign or the decision to reassign and subsequently terminate Janes, the Court will re-examine this question.

The Board's motions to bar Metcalfe's testimony and evidence of the 1995 and 1997 changes to the Board's reassignment policy are granted.

### H.     The Board's Motion to Bar Certain Evidence Concerning the Haberman Interview Instrument

The Board has moved to bar certain evidence concerning the Haberman Interview Instrument ("HII"), a test intended to predict whether a teacher is likely to "have success" teaching at urban schools. Principal Miguel Trujillo used certain questions drawn from the HII in interviews during the Summer of 2000 with candidates, including Plaintiff, for the position of art teacher at Roosevelt. Trujillo assigned scores based on the candidates' responses to the questions, and ultimately, he hired the candidate who received the highest overall score.

The parties agree that certain information about Trujillo's interviews during the Summer of 2000 is admissible at trial. The parties agree, for example, that the actual questions posed by Trujillo as well as the scores of the various candidates are admissible. Further, the parties agree that each side should be free to probe the role that factors other than the test scores played in Trujillo's hiring decision. The parties dispute, however, whether other evidence relating to those interviews should be admissible.

The Plaintiff has indicated that she will attempt to demonstrate that Trujillo used the HII in order to favor younger candidates interviewing for the art teacher position at Roosevelt. Specifically, Plaintiff suggests that she will introduce evidence that: (1) the HII guidelines

20

instruct that it is not a test scored by adding up points; (2) the HII is specifically designed to predict the success of recent college graduates; (3) Trujillo focused on the test results and ignored experience, educational background and other teaching credentials; and (4) the youngest candidates received the highest scores and the oldest candidates received the lowest scores.

The Board counters that this evidence should be excluded because Trujillo did not actually use the HII itself, but rather drew only certain questions from the HII to use during the interview. The Board suggests that as principal Trujillo was free to use whatever criteria he wanted in evaluating candidates for the art teacher position. The Board also contends that Plaintiff cannot lay a foundation for her claims that the HII is designed to evaluate only recent college graduates and that questions from the test should never be scored. Finally, the Board disputes Plaintiff's assertion about the relative ages and scores of the candidates for the art teacher position.

The Court agrees with the general proposition advanced by the Board that Plaintiff must lay an adequate foundation for any evidence concerning the HII. Thus, for example, if Plaintiff seeks to introduce evidence to show a correlation between a candidate's age and score on Trujillo's interview exam, she must lay a foundation for such evidence. In addition, Plaintiff would have to lay a foundation before making her claims concerning HII's supposed bias in favor of recent graduates and whether it is appropriate to "score" answers to HII questions. It seems unlikely that Plaintiff can lay such a foundation because, as the Board points out, Plaintiff has never deposed Haberman and because Plaintiff does not have an expert qualified to testify on this subject. If Plaintiff can lay such a foundation, however, the Court will re-examine this issue and address the admissibility of this evidence at trial.

21

The Board's motion to bar certain evidence concerning the Haberman Interview Instrument is granted in part and denied in part.

## I.    Plaintiff's Omnibus Motion *in Limine*

Plaintiff has filed an omnibus motion *in limine* seeking to bar evidence concerning: (1) the fact that Roosevelt was on academic probation in 1997; (2) Plaintiff's union grievance pertaining to her termination; (3) Plaintiff's receipt of unemployment compensation; (4) the Board's alleged compliance with its reassignment policy; (5) reference to the age of the Board's employees who played a role in any of the decisions relevant to this case; (6) reference to the fact that Trujillo asked 48 year old Stamatia Mangos to teach one art class in 1999; and (7) reference to the fact that the Board reassigned 28 year old Daniela Bylatis from Roosevelt in 1998.

First, the Court agrees that the fact that Roosevelt was on academic probation in 1997 is irrelevant to this case. Indeed, the Board does not contest this, but argues that no ruling is necessary because it does not intend to raise the probation issue at trial.

Second, the Court agrees that Plaintiff's union grievance is likewise irrelevant to this case. The Board does not argue that the union grievance procedure is itself relevant but argues that it should be permitted to use Janes' statements in connection with the union grievance proceedings as potential sources of impeachment at trial. The Court notes, therefore, that the Board shall be permitted to use Janes' statements during the union grievance procedure for impeachment purposes, if appropriate, provided that the Board refrains otherwise referring to the outcome or substance of that proceeding

Third, the Court agrees with Plaintiff evidence concerning Plaintiff's receipt of unemployment insurance is inadmissible. This Court concurs with the reasoning in *Steck v.*

22

*Bimba Manufacturing Co.*, No. 96 CV 7442, 1997 WL 685003, at *2 (N.D. Ill. Oct. 30, 1997). In *Steck*, Magistrate Judge Keys concluded that the "windfall" of unemployment benefits is best conferred on the employee rather than the employer (as a damages offset). *Id.* (citing *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1428 (7th Cir. 1986); *see also Tzoumi v. Tempel Steel Co.*, 168 F.Supp.2d 871, 874 (N.D. Ill. 2001) (granting motion *in limine* and barring evidence of plaintiff's receipt of unemployment compensation).

Fourth, the Court disagrees with Plaintiff concerning the admissibility of the Board's alleged compliance with its teacher reassignment policy. The Board is entitled to argue that the decision to reassign Janes and subsequently terminate her was simply pursuant to its policy and was not motivated by age discrimination.

Fifth, the Court disagrees with Plaintiff concerning the admissibility of the ages of those persons involved in the Board's decisions in this case. Although the Seventh Circuit has noted that the ages of the decision makers are "relatively unimportant," *see Kadas v. MCI*, 255 F.3d 359, 361 (7th Cir. 2001), it has not held that such evidence is irrelevant. As Judge Kennelly has noted, where the defendant intends to call decision makers to testify anyway, "the jury would have an opportunity to assess, or at least approximate, their ages even if the witnesses were not allowed to tell them." *Reglib v. R.R. Donnelley & Sons Co.*, No. 95 C 7401, 2002 WL 1182434, at *1 (N.D. Ill. June 3, 2002). Accordingly, the Board shall be permitted to elicit the ages of those persons who testify, although the Board shall not be permitted to argue that any inference of nondiscrimination arises simply because the terminating employees were the same age or older than Plaintiff. *Id.* (citing *Kadas*, 255 F.3d at 361).

23

Sixth, the Court disagrees with Plaintiff concerning the admissibility of evidence that Stamatia Mangos, a 48 year old teacher, was assigned to teach one art class at Roosevelt in 1999. Evidence concerning Mangos is relevant to rebut Plaintiff's claim that the decision to terminate Janes was motivated by the Board's desire to eliminate of older teachers.

Seventh, the Court disagrees with Plaintiff concerning the admissibility of evidence that Daniela Bylaitis, a 28 year old teacher, was also subject to the RIF in 1998. Evidence concerning the age of Bylaitis is relevant to rebut Plaintiff's claim that the decision to terminate Janes was motivated by the Board's desire to get rid of older teachers.

Accordingly, the Court grants in part and denies in part Plaintiff's omnibus motion *in limine*.

## J.     Plaintiff's Motion to Bar the Board's Newly Asserted Defenses

Plaintiff has filed a motion seeking to bar Defendant from asserting supposed new affirmative defenses, including that: (1) Janes was not rehired because principals prefer to hire "full time basis substitute teachers" and teachers who are eligible for Illinois Chapter 1 funding rather than appointed teachers; and (2) teachers, like Janes, with a state elementary school endorsement cannot be hired to teach any elementary school subject. Plaintiff contends that these arguments constitute new affirmative defenses which were not raised earlier in the litigation and are therefore barred.

With regard to the first supposed new affirmative defense, pertaining to the preference for full time basis substitutes and/or teachers that qualify for Illinois Chapter 1 funding, the Board counters that this argument is not an affirmative defense but rather simply a set of facts that would defeat Plaintiff's claims. The Board suggests that the argument does not constitute an affirmative defense because it simply denies the allegations raised by Plaintiff. Even if those arguments do

24

constitute affirmative defenses, however, the Board claims that it raised them earlier in this case, citing its affirmative defense that "[t]he employment decisions about which plaintiff complains were based on legitimate factors and not discriminatory motive." (*See* R. 34-1, Amended Answer, at 7.)

Plaintiff cites no authority for the proposition that in an age discrimination case each and every claimed legitimate nondiscriminatory reason for the Board's decision to terminate and later not to rehire her must be pled as a separate affirmative defense. Plaintiff cites *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1995), for the general proposition that defendants cannot assert affirmative defenses on the eve of trial. That case involved a statute of limitations defense, however, which under Federal Rule of Civil Procedure 8(c) must be separately pled as an affirmative defense. *See id.* at 967. Here, in its Answer and Amended Answer, the Board asserted generally that it would argue that its decision to terminate and later not to rehire Plaintiff was motivated by non-discriminatory reasons. This was sufficient.

Plaintiff also contends that this supposed new affirmative defense is inappropriate because the Board never explained it during discovery. Plaintiff might have served contention interrogatories seeking all the factual bases for the Board's assertion that there were legitimate nondiscriminatory reasons for Janes' termination. It does not appear that she did so, however. Instead, Plaintiff cites discovery requests where she asked for information regarding any financial incentives paid to principals and the Board's responses that there were no such incentives paid to principals. (*See* R. 103-1, Pl.'s Omnibus Reply in Support of Her Motions *in Limine*, at 6-7.) The Court notes that these discovery responses do not foreclose the argument now advanced by the Board.

Plaintiff also suggests that this supposed new affirmative defense was not cited by the Board's witnesses during their depositions and that the Board cannot lay any foundation that Janes'

25

relatively higher cost played any role in the decision to terminate and later not to rehire her. This argument is more compelling. As Plaintiff points out, the Board must show that the alleged legitimate nondiscriminatory reason for termination actually played a role in the Board's decision. *See Price Waterhouse v. Hopkins*, 228, 252, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989) ("An employer may not, in other words, prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision"). The Court notes that if the Board's witnesses offer testimony at trial that the Plaintiff's relative high cost played a role in the decision to terminate and later not to rehire her, they must do so from their personal knowledge. Further, the Board's witnesses will presumably be subject to impeachment if they failed to cite this reason for the decision to terminate and later not to rehire Janes during their depositions in this case.

With respect to the second supposed new affirmative defense, pertaining to the effect of a state elementary education endorsement, the Board argues that it is not attempting to assert a new affirmative defense but simply to correct a statement of uncontested fact from the pretrial order. Regardless whether the Board is correct as to the effect of a state elementary education endorsement, the Board cannot seek now to contest a previously uncontested fact. Indeed, the Board's earlier agreement that a teacher with a state elementary education endorsement can teach any elementary school subject represents a binding judicial admission. *See Spina v. Forest Preserve of Cook County*, No. 98 C 1393, 2001 WL 1491524, *10 (N.D. Ill. Nov. 23, 2001) (a party's agreement in pre-trial order with proposed uncontested fact constitutes binding judicial admission).

The Plaintiff's motion to bar the Board's newly asserted defenses is denied.

26

## CONCLUSION

As explained above, the Defendant's motion to bar evidence relating to claims allegedly outside the scope of Plaintiff's EEOC charges (R. 84-1) is denied; the Defendant's motion to bar Plaintiff's Statistical Expert (R. 85-1) is granted; the Defendant's motion to bar the testimony of Stephen Kallaus (R. 87-1) is denied; the Defendant's motion to bar the testimony of Nanette Powell (R. 88-1) is denied; the Defendant's motion to bar the testimony of Carlos Ponce and Xiomara Metcalfe (R. 90-1) is granted; the Defendant's motion to bar the testimony of the 1995 and 1997 amendments to the reassignment policy (R. 91-1) is granted; the Defendant's motion to bar evidence concerning the Haberman Interview Instrument (R. 89-1) is granted in part and denied in part; the Defendant's motion to bar three reports relating to the Board's employment practices (R. 92-1) is granted; the Plaintiff's omnibus motion *in limine* (R. 93-1) is granted in part and denied in part; and the Plaintiff's motion to bar newly asserted defenses (R. 94-1) is denied.

DATED: November 15, 2002        ENTERED

AMY J. ST. EVE
United States District Judge

27