# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6128 | **DATE** | 11/19/2002 |
| **CASE TITLE** | Ellen White Janes vs. Chicago Board of Education | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's Motion for Summary Judgment [doc. 51-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 19 2002 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | 112 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | 02 NOV 19 PM 4:18 date mailed notice | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ELLEN WHITE JANES, | ) | |
| | ) | |
| Plaintiff, | ) No. 00 C 6128 | **DOCKETED** |
| | ) | NOV 1 9 2002 |
| v. | ) Judge Amy J. St. Eve | |
| | ) | |
| CHICAGO BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ellen White-Janes ("Janes") has sued the Chicago Board of Education ("the Board") for alleged age discrimination in connection with its decision to terminate her and its later refusal to rehire her. The Board has moved for summary judgment. For the reasons set forth below, the Board's Motion for Summary Judgment is denied.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548,

1

2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate by specific factual allegations that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. The Court must "consider the evidentiary record in the light most favorable to the non- moving party . . . and draw all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). This Court accepts nonmovant Janes' version of any disputed facts, but only so long as it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). What follows in the Background section is culled from the parties' submissions.

## BACKGROUND

Plaintiff Ellen White-Janes was employed as a teacher by the Chicago Board of Education from 1969 to 1999, teaching elementary school and high school art. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶¶ 2-3, 6.) Most recently, Janes taught art at Roosevelt High School and served as chair of the art department. (*Id.* ¶ 4.) During her career, Janes earned several advanced degrees, including degrees in early childhood development and bilingual/bicultural education. (*Id.* ¶ 6.) Throughout her career with the Chicago Public Schools, Janes received high ratings on her performance evaluations. (*Id.* ¶ 5.)

During the 1997-1998 school year, the Board started to implement the High School Curriculum Redesign. (*See* R. 63-1, Pl.'s Resp. to Def.'s R. 56.1(a)(3) Stmnt. ¶ 3.) The Curriculum Redesign increased the graduation requirements for incoming freshman but vested principals with some discretion in how to implement curriculum changes, including certain flexibility in deciding what classes to offer. (*Id.* ¶¶ 4-5.) The Curriculum Redesign did not

require that high schools drop art classes, and no aspect of the Curriculum Redesign applied to elementary schools. (*Id.* ¶ 4.)

In connection with the Curriculum Redesign, Roosevelt reduced the number of art classes available to students. During the 1997-1998 school year, four full-time art teachers taught twenty art classes at Roosevelt. ((*See* R. 63-1, Pl.'s Resp. to Def.'s R. 56.1(a)(3) Stmnt.¶ 8.) Janes taught five of those art classes. (*Id.* ¶ 9.) After the 1997-1998 school year, the number of art classes available to students at Roosevelt was reduced to five, and the three art teachers were displaced or reassigned, including Janes. (*Id.* ¶¶ 11-12.) The Board contends that this reduction in force ("RIF") was conducted on the basis of seniority.[1]

Under the Board's standing teacher reassignment policy, the Board retained teachers with the most seniority and displaced or reassigned the others, depending on the number of closed teaching positions. (*Id.* ¶ 16.) Displaced teachers lost their regular assigned classes and became full-time substitutes. (*Id.* ¶ 18.) Reassigned teachers were simply laid off but continued to receive full-time salary and benefits. (*Id.* ¶¶ 19, 26.) Displaced or reassigned teachers had ten months to secure full-time teaching positions or face termination. (*Id.* ¶ 22.)

During the 1997-1998 school year, the Board informed Janes that she would become a reassigned teacher in connection with the Curriculum Redesign. (*See* R. 63-1, Pl.'s Resp. to Def.'s R. 56.1(a)(3) Stmnt. ¶ 20.) Janes applied for other teaching positions within the Chicago Public Schools by, among other things, submitting her resume to the Board, contacting directly those schools with open teaching positions listed by the Board, attending job counseling and

---

[1] In approximately February of 1999, Roosevelt added back one more art class. (*See* R. 63-1, Pl.'s Resp. to Def.'s R. 56.1(a)(3) Stmnt. ¶ 28.) Rather than adding another teacher, Roosevelt's principal, Miguel Trujillo, assigned Stamatia Mangos to teach this class. (*Id.* ¶¶ 31, 34.)

3

resume preparation sessions sponsored by the Board, and contacting principals directly about open teaching positions she learned of on her own. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶¶ 51, 67, 94.) Despite numerous open teaching positions, Janes received just a handful of interviews and failed to obtain a teaching position during the reassignment period. Accordingly, the Board terminated Janes in August of 1999. (*Id.* ¶¶ 70-71.)

Janes continued to seek a teaching position within the Chicago Public Schools after her termination. For example, within a few months after her termination, Janes learned of an open art teacher position at Taft High School. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶ 72.) Janes interviewed for the position but was not selected. Instead, the Board hired a twenty-eight year old teacher with no prior teaching experience in the Chicago Public Schools and little or no experience teaching art. (*Id.* ¶ 73.)

Janes also sought a teaching position that became available at Roosevelt during the Fall of 2000. This teacher position became available when Roosevelt increased the number of art classes available to students for the 2000-2001 school year. (*See* R. 63-1, Pl.'s Resp. to Def.'s R. 56.1(a)(3) Stmnt. ¶ 36.) Principal Miguel Trujillo received seventeen applications for this position, and together with assistant principal Willard Uber, he interviewed ten candidates, including Janes. (*Id.* ¶¶ 37-40.) During the interview, Trujillo and Uber "scored" the applicants based on their responses to various questions. (*Id.* ¶¶ 42-43.) The Board hired Sonia Borja, a twenty-four year old teacher with little or no art teaching experience. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶ 82.). Borja quit just a few weeks after the beginning of the school year, however, and the art teacher position again became available. (*Id.*

4

¶ 84.) Trujillo did not contact any of the individuals who had already interviewed for the position nor did they seek names of previously reassigned teachers. Instead, Trujillo contacted an independent recruiter seeking candidates to fill the art teacher position. (*Id.* ¶ 86.) Trujillo interviewed four candidates before ultimately hiring Stephen Kallaus, who was twenty-seven. (*Id.* ¶¶ 93-94.)

Meanwhile, during the period that Janes actively sought another teaching position within the Chicago Public Schools, the Board hired a number of unqualified teachers. For example, less than one year after her termination, the Board hired three high school art teachers who were substantially younger than Janes or outside the protected class, and who were not qualified to teach art because they lacked the required art endorsement. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶ 97.) Further, between January of 1999 and April of 2001, the Board hired eight elementary school teachers who were either substantially younger than Janes or outside the protected class, and who lacked the preferred art endorsement to teach elementary school art. (*Id.* at ¶ 98.)

## ANALYSIS

### I. PLAINTIFF'S CLAIMS AND THE SCOPE OF HER EEOC CHARGES.

As an initial matter, the Board contends that Janes' claims should be limited to the scope of the charges she filed with the EEOC. The Board argues that since Janes did not specifically refer in her EEOC charges to either the RIF at Roosevelt or the Board's subsequent failure to hire her for some other teaching position within the Chicago Public Schools, she cannot assert claims based on these alleged wrongs and cannot introduce evidence to support those claims.

The Board raised these same arguments in its motion *in limine* to bar evidence relevant to claims outside the scope of Janes' EEOC charges. This Court denied that motion on November 18, 2002. For the reasons expressed in that November 18 order, Janes' claims pertaining to the RIF and the Board's failure to hire her for some other position within the Chicago Public Schools do fall within the scope of her EEOC charges.

## II. PLAINTIFF'S DISCRIMINATION CHARGES.

To prevail on her discrimination claims, Janes must establish that the Board's adverse employment decisions would not have occurred "but for" the Board's motive to discriminate against her because of her age. *O'Connor v. DePaul Univ.*, 123 F.3d 665, 669 (7th Cir. 1997); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000) (plaintiff must prove that age "actually played a role" and had "a determinative influence on the outcome"). At the summary judgment stage, Janes can make the required showing in two ways: with direct or circumstantial evidence that the adverse employment action would not have been taken but for plaintiff's age (the direct method) or through the *McDonnell Douglas* burden-shifting method (the indirect method). *See Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1028 (7th Cir. 1998); *Weisbrot v. Medical College of Wis.*, 79 F.3d 677, 680-81 (7th Cir. 1996); *Kormoczy v. Secretary Dept. of Housing Urban Dev.*, 53 F.3d 821, 824 (7th Cir. 1995). However, "[u]nder either method, summary judgment is improper if the plaintiff offers evidence from which an inference of age discrimination may be drawn." *Fukea v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402-03 (7th Cir. 1996).

6

## A. Plaintiff's Termination Claim.

### 1. Janes' Direct Evidence of Discrimination.

Because employers are generally not so accommodating as to memorialize their discriminatory animus in writing or to speak it aloud, a plaintiff usually must rely on circumstantial evidence in the hope of providing "a basis for drawing an inference of intentional discrimination." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). But here Janes proffers proof in the form of direct evidence -- "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents" (*id.*) -- that the Board intentionally and impermissibly took Janes' age into account in deciding to fire her.

Specifically, Janes points to alleged ageist comments made by Roosevelt principal Miguel Trujillo, including:

> (1) testimony by Janes that Trujillo told a faculty meeting at the beginning of the 1997-1998 school year that "we are going to get rid of the old deadwood from this faculty. Look around. You will not see everybody you see today next year." (R. 40-1, Pl.'s Mot. *in Limine*, at Ex. A, p. 51);
>
> (2) testimony by Joyce Dabbouseh (who was also a teacher at Roosevelt) that Trujillo's commented during a meeting in the Spring of 1998 that as part of his plan for improving Roosevelt he was going to "bring in new, young and energetic" teachers and get rid of the "old dead wood" (*id.* at Ex. B, ¶ 3); and
>
> (3) testimony by Dabbouseh that in the Fall of 1998 Trujillo said that he was energizing the school by replacing the "older teachers" (*id.* at Ex. B, ¶ 4).

In order for an alleged discriminatory statement to serve as evidence of discrimination, it must be "made by a decision maker," *Stopka v. Alliance of American Insurers*, 141 F.3d 681, 688 (7th Cir. 1998), or by one "who provide[s] input into the decision," *Hunt v. City of Markham*, 219

7

F.3d 649, 652 (7th Cir. 2000), and the statement must be "related to the employment decision at hand." Such comments or remarks "must be contemporaneous with the discharge or causally related to the discharge decision making process." *Wichmann v. Board of Trustees of Southern Illinois University*, 180 F.3d 791, 801 (7th Cir. 1999) (quotations and citations omitted).

Janes has suggested that Trujillo was a decision maker because he had flexibility in how to implement the Curriculum Redesign at Roosevelt. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶¶ 29, 31, 34.) She claims that Trujillo could have accepted fewer cuts in the art department, and that Trujillo manipulated the curriculum changes in order to eliminate more older teachers.

Accepting Janes' well-supported allegations as true, Trujillo's comments are not mere "stray remarks," because they relate to Trujillo's plans to replace older teachers with younger ones. Unlike a random slur that does not reflect the thinking of the individuals with decision making authority, *see Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir. 1990), the age-based comments here have been attributed to someone high in the decision making process. Further, Trujillo's comments were contemporaneous or causally related to his plans to replace older teachers with younger ones because he made those comments during the period that the Board was implementing the Curriculum Redesign and he was deciding on staffing requirements for the 1998-1999 school year. *See Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996) (comments must be "contemporaneous with the discharge or causally related to the discharge decision making process").

Trujillo's alleged ageist comments, together with his subsequent hiring of teachers outside the protected class, are direct evidence of discrimination sufficient to defeat summary judgment. Accepting Janes' well supported allegations, a jury could reasonably conclude that Janes'

8

termination was motivated by age discrimination. *See, e.g., Wold v. Fellows Corp.*, 987 F.Supp. 662, 667 (N.D. Ill. 1997) (ageist comments by supervisor involved in termination decision sufficient to defeat summary judgment).[2]

### 2. Janes' Indirect Evidence of Discrimination.

Where the plaintiff's direct evidence of discrimination is sufficient to stave off summary judgment, there is generally no need to address the *McDonnell Douglas* burden-shifting analysis. As the Supreme Court has explained, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985). *See also Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir. 1989) ("These two methods of proof constitute 'different evidentiary paths' available to a plaintiff seeking to prove the ultimate issue of defendant's discriminatory intent.") (citation omitted). Nonetheless, this Court shall address Plaintiff's indirect evidence of discrimination as well.

Under the indirect burden-shifting method, Janes must establish a *prima facie* case by demonstrating that she: (1) was in a protected group at the time of her termination claim; (2) was performing her job satisfactorily; (3) was terminated; and (4) was treated less favorably than similarly situated and younger employees. *See Richter*, 142 F.3d at 1028. *Bellaver v. Quanax Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). If Janes meets these requirements, a rebuttable presumption of discrimination applies and the burden of production shifts to the Board to articulate some non-discriminatory reason for its actions. *See Basith v. Cook County*, 241 F.3d 919, 932 (7th Cir.

---

[2] The Board previously moved to bar evidence of these alleged ageist comments by Trujillo. On November 8, 2002, this Court denied that motion in relevant part, noting that there was an issue of fact as to Trujillo's role in Jane's termination.

9

2001); *Roberts v. Separators, Inc.*, 172 F.3d 448, 451 (7th Cir. 1999); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the Board articulates a non-discriminatory reason the presumption dissolves, and Janes has to show that the Board's asserted reason was pretextual, either that: (1) the Board was more likely motivated by a discriminatory reason than by its proffered reason or (2) the Board's proffered reason is unworthy of credence. *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir. 1994); *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 372 (7th Cir. 1992).

The parties essentially agree that Janes has satisfied the first three elements of her *prima facie* case under the burden-shifting method, but the parties disagree whether Janes has established that she was treated less favorably than similarly situated and younger employees. In a case involving an alleged RIF, a plaintiff can satisfy the fourth element of her *prima facie* case by showing that the employer hired someone outside the protected class (or more than ten years younger than her) within a year after her termination because of the employee's age. *Adams v. Ameritech Services, Inc.*, 231 F.3d 414, 422 (7th Cir. 2000); *Janiuk v. TCG/Trump Co.*, 157 F.3d 504, 507 (7th Cir.1999); *Ayala v. Mayfair Molded Prods. Corp.*, 831 F.2d 1314, 1320 (7th Cir. 1987).

This Court concludes that Janes adduced evidence sufficient to defeat summary judgment on the fourth element of her *prima facie* case. Specifically, Janes has established that the Board hired three high school art teachers who were substantially younger than Janes or outside the protected class, and who were not qualified to teach art because they lacked the required art endorsement. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶ 97.) Further,

Janes has established that between January of 1999 and April of 2001 the Board hired eight elementary school teachers who were either substantially younger than Janes or outside the protected class, and who lacked the preferred art endorsement to teach elementary school art. (*Id.* at ¶ 98.)

Nonetheless, the Board insists that summary judgment is appropriate because Janes cannot rebut its justification for her termination -- namely, that she was terminated because of a decrease in the number of art courses at Roosevelt and a decrease in the need for art teachers there. The Board also suggests that it was justified in terminating Janes because she failed to obtain another full-time position within her ten month reassignment period. Finally, the Board asserts that Janes did not receive an alternative position because she failed to apply for more than just a handful of specific positions. Thus, the Board contends that, even if Janes has made a *prima facie* case of age discrimination on her termination claim, it has proffered a legitimate non-discriminatory reason for her termination, thereby shifting the burden back to her.

Contrary to the Board's suggestion, however, Janes has supplied evidence tending to rebut the Board's asserted justification for her termination. Indeed, Janes has pointed to evidence calling into question whether the Board carried out a RIF at all. Janes points out that, rather than reducing staffing within the Chicago Public Schools, the Board actually hired several teachers for positions that Janes was qualified to fill. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶¶ 97-98.) Further, Janes has supplied evidence tending to rebut the Board's claim that the RIF was dictated simply by decreased enrollment and the resulting drop in the demand for art courses and art teachers at Roosevelt. Indeed, Janes has suggested that the Curriculum Redesign did not require Trujillo to cut the number of art classes and teachers and that his decision to do so was motivated by ageist bias. Janes points to, among other things, Trujillo's decision to add back more art classes

11

to the curriculum in 1999 as well as his decision to hire another full time art teacher in 2000, both times engaging younger, perhaps less qualified teachers. (*Id.* ¶¶ 28, 31, 36, 94.) In light of Trujillo's ageist comments -- which, viewing the evidence in the light most favorable to Plaintiff, are admissible as evidence of pretext, *Huff v. UARCO, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997) -- a reasonable jury might conclude that Trujillo restricted art course offerings and thereby engineered Janes' termination in order to cut the overall number of older teachers at Roosevelt.

Janes has also presented evidence rebutting the Board's claimed reason why she failed to obtain an alternative teaching position during her reassignment period. Indeed, Janes' testimony establishes that she applied for numerous other teaching positions within the Chicago Public Schools by, among other things, submitting her resume to the Board, contacting directly those schools with open teaching positions listed by the Board, attending job counseling and resume preparation sessions sponsored by the Board, and contacting principals directly about open teaching positions she learned of on her own. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶¶ 51, 67, 94.) Moreover, Janes has supplied evidence showing that at least several of the teachers hired by the Board during her reassignment period were actually unqualified. (*Id.* ¶¶ 97, 98, 103.) Thus, a reasonable jury might conclude that Janes did in fact apply for other positions within the Chicago Public Schools.

In sum, under the *McDonnell Douglas* burden shifting method, Janes has supplied sufficient evidence to permit a reasonable jury to conclude that the Board's decision to terminate her was motivated by improper age discrimination.

12

### B.     Janes' Failure to Re-Hire Claim.

#### 1.     Janes' Direct Evidence of Discrimination.

Janes argues that she likewise can meet her burden of establishing discrimination on her failure to re-hire claim using direct evidence. Again, Janes relies principally on the alleged ageist comments by Trujillo. In its November 18, 2002 order, however, this Court ruled that Trujillo's alleged ageist comments were not admissible on Janes' failure to re-hire claim because those comments were not contemporaneous with his decision not to rehire her. *See, e.g., Indurante v. Local 705, Intern. Broth. of Teamsters, AFL-CIO*, 160 F.3d 364, (7th Cir. 1998) (holding alleged discriminatory comments inadmissible in part because "the statements of Burke and McCormick are not contemporaneous with Indurante's firing; they come about 16 months earlier."); *Geier v. Medtronic*, 99 F.3d 238, 242 (7th Cir.1996) (comments made a year prior to a discharge were inadmissible because the comments were "not temporally related" to the termination).

#### 2.     Janes' Indirect Evidence of Discrimination.

Regardless whether Janes' direct evidence of discrimination in her failure to re-hire claim is sufficient to withstand summary judgment, however, this Court concludes that Janes' indirect evidence of discrimination does pass muster.

In the context of a failure to re-hire claim, a plaintiff has an initial burden of making out a *prima facie* case by establishing that: (1) she belongs to a protected group; (2) she applied for and was qualified for a job for which the employer was seeking applications; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer hired or continued to seek applicants of the same qualifications as the plaintiff. *See Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331 (7th Cir. 1995). Once the plaintiff

13

establishes these elements, the burden shifts to defendant to give a legitimate, non-discriminatory reason for its refusal to hire the plaintiff. *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 232 (7th Cir. 1992). If the defendant demonstrates a legitimate ground for failure to hire, then the burden shifts back to the plaintiff, who must show that defendant's stated reason is merely a pretext for discrimination. *Id.*

The Board does not suggest that Janes cannot make out a *prima facie* case on her claim that the Board failed to re-hire her; instead, the Board argues that it has advanced a nondiscriminatory reason for its decision. Specifically, the Board asserts that Janes did not receive a position within the Chicago Public Schools because she failed to apply for more than just a handful of specific positions. Further, the Board contends that Janes was not re-hired for those specific positions that she did apply for because she was passed over in favor of other, more qualified candidates. Thus, the Board contends that, even if Janes has made a *prima facie* case of age discrimination on her failure to re-hire claim, it has proffered a legitimate non-discriminatory reason for her termination, thereby shifting the burden back to her.

This Court concludes that Janes has supplied evidence tending to rebut the Board's asserted justification for its failure to re-hire her, however. As discussed above, Janes has presented evidence establishes that she applied for numerous other teaching positions within the Chicago Public Schools and that some of the teachers hired by the Board were actually unqualified. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶¶ 51, 67, 94, 97, 98, 103.) Thus, a reasonable jury might conclude that Janes did in fact apply for numerous other positions within the Chicago Public Schools.

Further, with respect to the Board's failure to re-hire Janes at Roosevelt in 2000, Janes has presented evidence suggesting that the Board's purported nondiscriminatory reason was pretextual. Specifically, Janes has presented evidence suggesting that she was more qualified and had substantially more experience than either Sonia Borja, the twenty-four year old teacher initially hired to teach art at Roosevelt, or Stephen Kallaus, the twenty-seven year old teacher hired after Borja quit just one month into the school year. (*See* R. 61-1, Pl.'s Stmnt. of Facts which Require Denial of Summ. J. ¶¶ 82-84, 93-94.) Moreover, Janes has suggested that Trujillo bypassed the normal application process and ignored persons who had previously expressed interest in the job (including Janes) before hiring Kallaus. (*Id.* ¶ 86.) Viewing this evidence in the light most favorable to her, a reasonable jury might conclude that the Board's purported justifications were pretextual.

## CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment (R. 51-1) is denied.

DATED: November 19, 2002        ENTERED

AMY J. ST. EVE
United States District Judge

15